UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIA ANN HUDSON,

                Plaintiffs,

   v.

KING COUNTY HOUSING
AUTHORITY et al.,

                Defendants.

CASE NO. 2:24-cv-00770-TL

ORDER ON MOTIONS TO DISMISS

    This is an action alleging wrongful conduct by the King County Housing Authority, Bellevue Police Department, and several employees of each agency. The alleged misconduct appears to be related to the municipal agencies' alleged theft of Plaintiff's personal property. This matter is before the Court on Defendants' Motions to Dismiss (Dkt. Nos. 45, 46) and Motion to Strike Plaintiff's Surreply and Subjoined Declaration (Dkt. No. 55), and Plaintiff's Motion for Leave to File Surreply (Dkt. No. 56).

ORDER ON MOTIONS TO DISMISS - 1

Having considered the briefing for all motions, as well as the relevant record, the Court GRANTS Defendants' motions to dismiss (Dkt. Nos. 45, 46), and DENIES AS MOOT Defendants' Motion to Strike (Dkt. No. 55) and Plaintiff's Motion for Leave (Dkt. No. 56).

## I. BACKGROUND

### A. Procedural Background

On June 1, 2024, Plaintiff Maria Hudson, proceeding *pro se*, initiated this lawsuit by filing an application to proceed *in forma pauperis* (Dkt. No. 1), which was granted by United States Magistrate Judge S. Kate Vaughan on June 4, 2024 (Dkt. No. 4). Plaintiff's original complaint named two municipal agencies as defendants—King County Housing Authority ("KCHA") and Bellevue Police Department ("BPD"). *Id.* at 1. Plaintiff also named numerous individuals as defendants, including current and former KCHA employees Stephen Norman, Shawli Hathaway, Ron Ovadenko, Peter Tran, Scott Fier, and Corey Brown; and current and former BPD employees Wendell Shirley, Kathleen Carly, Robin Peacy, Landon Barnwell, an individual named Hyatt, and "other officers unknown." Dkt. No. 5 at 2.

On July 15, 2024, Plaintiff filed an amended complaint. Dkt. No. 12. The amended complaint dropped Norman, Fier, Peacy, Hyatt, and the unknown officers from the roster of defendants and proceeded against the remaining eight. *Id.* at 1.

On July 22, 2024, Plaintiff sought leave to amend her complaint again. Dkt. No. 19. While Plaintiff's motion to amend was pending, Defendants organized into two groups: the "King County Defendants," comprising KCHA, Hathaway, Ovadenko, and Tran; and the "Bellevue Defendants," comprising BPD, Shirley, Carly, and Barnwell. *See* Dkt. Nos. 20, 21. Both sets of Defendants opposed Plaintiff's motion to amend (Dkt. Nos. 23, 24), and both sets concurrently moved to dismiss Plaintiff's complaint, in the event that the Court denied Plaintiff's motion to amend (Dkt. Nos. 25, 26). On September 18, 2024, the Court granted Plaintiff's

motion to amend and denied Defendants' motions to dismiss as moot. Dkt. No. 42. Plaintiff was ordered to file a second amended complaint within 30 days, and Defendants were invited to re-file their motions to dismiss after that. *Id.* at 3.

On October 18, 2024, Plaintiff filed a second amended complaint ("SAC"), which is the operative complaint in this case. Dkt. No. 44. Plaintiff followed the "King County Defendants"/"Bellevue Defendants" convention and named as defendants: KCHA, Hathaway, Ovadenko, and Tran; and BPD, Shirley, Carly, and Barnwell. *Id.* at 2. On November 4 and 5, 2024, each set of Defendants respectively filed a motion to dismiss. Dkt. Nos. 45, 46. Plaintiff responded (Dkt. No. 49), and Defendants replied (Dkt. Nos. 52, 53). After Defendants filed their replies, however, Plaintiff on December 2, 2024, submitted an unauthorized 24-page surreply labeled as a "Second Response." Dkt. No. 54; *see* LCR 7(g)(2). On December 5, 2024, the Bellevue Defendants moved to strike Plaintiff's surreply. Dkt. No. 55. The next day, Plaintiff filed an *ex post* motion for retroactive permission to file her surreply. Dkt. No. 56. On December 11, 2024, the Bellevue Defendants responded to Plaintiff's motion. Dkt. No. 57. On December 18, 2024, Plaintiff filed a 38-page reply. Dkt. No. 60.

Presently before the Court, then, are four pending motions: (1) King County Defendants' Motion to Dismiss (Dkt. No. 45); (2) Bellevue Defendants' Motion to Dismiss (Dkt. No. 46); (3) Bellevue Defendants' Motion to Strike Plaintiff's Surreply (Dkt. No. 55); and (4) Plaintiff's *ex post* Motion for Leave to File Surreply (Dkt. No. 56).

**B.    Factual Background**

The Court assumes as true all facts alleged in the SAC. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff is a disabled individual who resides in Bellevue, Washington. Dkt. No. 44 at 3. Plaintiff alleges that on an unspecified date, she "receive[d] two reasonable accommodation moves" from carriers "Reliable and Eco Movers." *See id.* (The SAC also

contains references to a commercial relationship between Plaintiff and a carrier named "Packrat," but it is unclear how Packrat was involved, if at all, in the events that gave rise to this lawsuit.) At least one of Plaintiff's "reasonable accommodation" moves—that involving Eco Movers—transported Plaintiff's "household goods." *Id.* at 10. This move was facilitated by KCHA, which assumed the role of "customer," while Plaintiff was "considered the consignee." *Id.* During these moves, Plaintiff alleges that she "was deprived of personal property" worth $177,000. *Id.* at 3–4.

Plaintiff alleges further that she was also "deprived of . . . records in [her] file." *Id.* at 3. On August 23, 2019, Plaintiff contacted Defendant KCHA by email and requested "a complete and full copy of my file for both containers." *Id.* at 7. It is not apparent from the SAC what "containers" Plaintiff was referring to, or which "file" she was seeking. In any event, Plaintiff alleges that KCHA did not respond, and that on or about November 11, 2019, Plaintiff's daughter made another request for the records on Plaintiff's behalf. *Id.* at 8. On December 2, 2019, KCHA responded by email and provided Plaintiff with "what [it] could find." *Id.* at 9. On March 8, 2021, Plaintiff received an email from the Washington Utilities and Transportation Commission, which advised her that Eco-Movers had not been "completing a cube sheet inventory for household goods moves it perform[ed] for King County Housing Authority." *Id.* at 10.

Plaintiff alleges that, on or about March 24, 2021, she became aware that she had been a victim of "conversion frauds" perpetrated by "Eco and Reliable movers." *Id.* at 12. Plaintiff subsequently "fil[ed] fraud reports" with KCHA and BPD. *Id.* Plaintiff alleges that KCHA's "fraud department . . . did nothing about Plaintiffs [*sic*] request for investigation," and that BPD "conspired to do an improper criminal investigation and deliberately did not speak with witnesses who had . . . knowledge of" the "crimes" that Plaintiff had reported. *Id.* at 14. Plaintiff also alleges that during this time period, she "was in a lawsuit with Bellevue School District . . .

ORDER ON MOTIONS TO DISMISS - 4

for Injuries to a Child." *Id.* at 20. Plaintiff alleges that "Bellevue Police Department was named in civil conspiracy malfeasance of child abuse and mandatory reporting duties." *Id.*

## II. LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

A *pro se* complaint must be "liberally construed" and held "to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even so, a court should "not supply essential elements of the claim that were not initially pled." *Henderson v. Anderson*, No. C19-789, 2019 WL 3996859, at *1 (W.D. Wash. Aug. 23, 2019) (quotation marks omitted) (quoting *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)); *see also Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019) ("[C]ourts should not have to serve as advocates for pro se litigants." (quoting *Noll v.*

1    *Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987))). Further, "it is axiomatic that pro se litigants,

2    whatever their ability level, are subject to the same procedural requirements as other litigants."

3    *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022) (internal citations omitted). Still, "[a]

4    district court should not dismiss a *pro se* complaint without leave to amend unless 'it is

5    absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"

6    *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d

7    1202, 1203–04 (9th Cir. 1988)).

###    III.    PRELIMINARY MATTER

The SAC includes what appears to be information—including unredacted medical records—pertaining to a minor child. *See* Dkt. No. 44 at 29, 34, 38–39. Local Civil Rule 5.2 requires parties to omit from all documents full dates of birth and names of minor children. LCR 5.2(a). "Although there is a presumption in favor of maintaining public access to court records, the Court notes that medical records are deemed confidential under the Health Insurance Portability and Accountability Act of 1996. In view of these considerations, the Court finds that the need to protect the Patient's confidential medical information outweighs any necessity for disclosure." *San Ramon Reg'l Med. Ctr., Inc. v. Principal Life Ins. Co.*, No. C10-2258, 2011 WL 89931, at *1 n.1 (N.D. Cal. Jan. 10, 2011). Here, this Court likewise finds the need to protect the name of a minor child and other personal and medical information, even more so as the information in question does not appear to be related to the merits of the case. Plaintiff is advised that documents filed with the Court are public records and are accessible online.

The Clerk is therefore DIRECTED to SEAL Plaintiff's Second Amended Complaint (Dkt. No. 44); REDACT the name N. that appears twice on page 29 and once on page 34; REDACT pages 38 and 39 in their entirety; and REFILE the redacted version of the SAC. *See Benshoof v. Admon*, No. C23-1392, 2024 WL 3358608, at *1 (W.D. Wash. July 10, 2024) (redacting *sua sponte* parts

of record that include private information "that in no way relate[s] to the merits of the case"); *San Ramon Reg'l Med. Ctr., Inc.* 2011 WL 89931, at *1 n.1 (redacting medical information *sua sponte*).

## IV.  DISCUSSION

The SAC is somewhat difficult to follow. It includes lengthy excerpts from the Revised Code of Washington and Washington Administrative Code, as well as correspondence and records and documents from legal proceedings of seemingly limited relevance to the matter at hand. *See, e.g.*, Dkt. No. 44 at 4–7, 16–19. Although relevant information appears throughout the SAC, the Court will primarily take the text plainly labeled as "First Claim," "Second Claim," and "Third Claim" as the operative causes of action in this matter. *See id.* at 26–27. Those three claims are for:

> First Claim[:] 42 U.S.C. § 1983—Against All Defendants
>
> [ . . . ]
>
> Second Claim[:] Conspiracy to Compound Anticipated Litigation Insurance Conversion Frauds Housing Authority Records Crimes $177,000 Personal Property with Reliable and Eco Movers Violations of RCW 48.30A.070 Duty to investigate, enforce, and prosecute violations and RCW 9A.80.010 Official misconduct—Against Defendants KCHA and BPD
>
> [ . . . ]
>
> Third Claim[:] Violations RCW 49.60.178 Washington Law Against Discrimination Human Rights Commission Unfair practices with respect to insurance transactions during a Reasonable Accommodations Move for a Disabled Person and WAC 284-30-330 Specific unfair claims settlement practices defined (1)–(4);(6)—Against Defendants KCHA and BPD

*Id.* at 26.

The Court notes that in her Response to Defendants' Motions to Dismiss, Plaintiff attempts to augment and add to the allegations in the SAC. *See generally* Dkt. No. 49. When

discussing her Section 1983 claim, for example, Plaintiff references "The Fair Housing Act of 1968, as amended in 1988," and the "federal interstate commerce clause." *Id.* at 7. This statute and constitutional provision are not mentioned in the SAC. Plaintiff also asserts that BPD "aided suppression of evidence and witnesses," an allegation she does not present in the SAC. *Id.* "It is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (first citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); then citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). The Court will thus necessarily limit its review to those allegations specifically made in the SAC. *See Lee*, 250 F.3d at 688.

A.   **Section 1983 Claim**

Plaintiff brings her first cause of action under 42 U.S.C. § 1983 and directs her allegations against all Defendants. Dkt. No. 44 at 26. Allegedly, Defendants "unlawfully deprived Plaintiff of $177,000 values [*sic*] worth of property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States." *Id.* Further, Defendants allegedly "made an unreasonable and warrantless seizure of Plaintiff's personal property values and papers/documents for anticipated litigation insurance claims in violation of the Fourth Amendment to the Constitution of the United States." *Id.* Plaintiff also appears to predicate her Section 1983 claim on alleged violations of the First, Second, and Eighth Amendments to the United States Constitution; 42 U.S.C. §§ 1981, 1982, and 1985; the Rehabilitation Act of 1973; the Americans With Disabilities Act; and the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970. *Id.* at 3. But it is not clear from the SAC how these other constitutional and statutory provisions are implicated in her Section 1983 complaint. Plaintiff expressly pleads violations of the Fourth and Fourteenth Amendments in the SAC's Statement of Claim, but her references to these other amendments and statutes

appear only in an introductory section of the SAC and are not elaborated upon later. *Compare* Dkt. No. 44 at 26, *with* Dkt. No. 44 at 3.

Irrespective of the specific statutory and constitutional bases for Plaintiff's Section 1983 claim, the Court construes its substance—that is, the alleged "deprivation of . . . rights secured by the Constitution and [federal] laws"—as comprising two instances of allegedly unlawful taking: $170,000 worth of property in the first instance, and "personal property values and papers/documents" in the second. 42 U.S.C. § 1983; Dkt. No. 44 at 26. Plaintiff asserts that these takings occurred "on or about March 24, 2021." Dkt. No. 44 at 3. Plaintiff specifically alleges that she "was deprived of personal property rights and its value by both when becoming aware of conversion insurance frauds of anticipated litigation records in tenants file on or about March 24, 2021." *Id.*

This claim is untimely. While "state law governs the limitations period in this case, federal law determines when the limitations period begins to run." *Trotter v. Int'l Longshoremen's & Warehousemen's Union, Loc. 13*, 704 F.2d 1141, 1143 (9th Cir. 1983). As to the statute of limitations relevant to this claim, in Washington, "[a]n action for taking, detaining, or injuring personal property" must be commenced "within three years." RCW 4.16.080(2). As to accrual of the claim, "[t]he general federal rule is that a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Trotter*, 704 F.2d at 1143. This "general federal rule" applies to injuries alleged in Section 1983 claims. *See Aloe Vera of Am., Inc. v. United States*, 699 F.3d 1153, 1159 (9th Cir. 2012) (collecting cases).

Here, Plaintiff's allegations conflict with one another, as well as with documentary evidence included in the SAC. Plaintiff provides contradictory dates about when she "was deprived of personal property" (March 24, 2021); when she "was just starting to become aware"

of the alleged deprivation (March 8, 2021); when she first inquired into potentially missing property (August 23, 2019); and when "the last wrong actions [were taken]" (July 16, 2021, and September 28, 2021). Dkt. No. 44 at 3, 7, 9; Dkt. No. 49 at 8.

"[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994) (citations omitted); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (holding that a court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint). Plaintiff alleges that she both sustained the alleged injury and became aware of it on or about March 24, 2021. Dkt. No. 44 at 26. But Plaintiff also asserts that she "start[ed] to become aware" on March 8, 2021. *Id.* at 9. Moreover, the Court notes that, notwithstanding the language of the claim itself, Plaintiff embedded in the SAC documentation that suggests that her property was actually taken from her at some time in 2019. Dkt. No. 44 at 7; *see also* Dkt. No. 46 at 17. Specifically, on August 23, 2019, Plaintiff sent an email to "dhearon@1800packrat.com" and "cynthiar@kcha.org" that requested "a complete and full copy of my file for both containers," suggesting that Plaintiff began inquiring into her missing property then. *Id.* (And one would think that one would realize that property was missing upon unpacking after the completion of the move, not years later.) If that were so, then the alleged deprivation of property would have necessarily occurred before August 23, 2019. Under the three-year statute of limitations provided for in Washington law, then, Plaintiff would have had until August 23, 2022, to file her action.

But even if the Court ignores Plaintiff's inclusion of the email and does not credit the alleged deprivation of property as having taken place in 2019, the Court finds that the most generous it can be with respect to the date of the claim's accrual is, at the very latest, March 8,

2021—the date Plaintiff learned that Eco-Movers had not been completing cube sheet inventory for moves it performed for KCHA. *See* Dkt. No. 44 at 9, 10. And if March 8, 2021, is the date on which the three-year statute of limitations began to run, Plaintiff did not act before it lapsed on March 8, 2024.

Plaintiff opened the instant case by filing an application to proceed *in forma pauperis* on June 1, 2024, some 85 days after the March 8, 2024, expiration of the statute of limitations. *See* Dkt. No. 1. In her response to Defendants' motions, Plaintiff counters that her "claims are timely and are not barred by the statute of limitations because the last wrong actions taken by Defendants BPD were on July 16, 2021 and KCHA by and through Corey Brown went through September 28, 2021." Dkt. No. 49 at 8. But neither of these assertions about "last wrong actions taken" gets around the fact that, as alleged, Plaintiff's claim accrued on March 8, 2021, when she "start[ed] to become aware . . . that movers had not performed cube sheet inventory. Dkt. No. 44 at 9; *see Trotter*, 704 F.2d at 1143. That is the date on which Plaintiff "kn[ew] or ha[d] reason to know of the injury which is the basis of the action." *Trotter*, 704 F.2d at 1143. And as Plaintiff's claim is specifically for "unlawful[] depriv[ation] . . . without due process of law," the Court finds that the nonspecific references to "wrong actions taken" do not supersede the date on which Plaintiff allegedly became aware that some of her property was missing—and therefore do not change the date upon which this claim accrued. *See id.* at 26.

Because Plaintiff's claim is time-barred by the statute of limitations, the Court finds that amendment would be futile. Simply put, Plaintiff cannot revise the underlying chronology of the events that gave rise to her complaint. *See Deutsch v. Turner Corp.*, 324 F.3d 692, 718 n.20 (9th Cir. 2003) (affirming dismissal with prejudice based on lapsed statute of limitations).

Therefore, the Court DISMISSES WITH PREJUDICE Plaintiff's first cause of action.

ORDER ON MOTIONS TO DISMISS - 11

**B.      State Law Claims**

Plaintiff's second and third causes of action are state-law claims. In pleading them, Plaintiff invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). *See* Dkt. No. 44 at 3. Having dismissed Plaintiff's federal-question claim with prejudice, however, the Court now declines to exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367(c)(3).

"When a district court 'has dismissed all claims over which it has original jurisdiction,' it 'may decline to exercise supplemental jurisdiction' over the remaining state law claims." *Pell v. Nuñez*, 90 F.4th 1128, 1135 (9th Cir. 2024) (quoting 28 U.S.C. § 1367(c)(3)). The decision whether to decline supplemental jurisdiction is informed by values "of economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (internal quotation marks and citation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, principles of economy, convenience, fairness, and comity do not favor the exercise of supplemental jurisdiction over Plaintiff's state-law claims, especially at this early stage in the proceedings. *See, e.g.*, *Direct Route, LLC v. Onoffline, Inc.*, No. C09-1509, 2012 WL 13019204, at *2 (W.D. Wash. Apr. 6, 2012) (declining supplemental jurisdiction at "very early stage" where "parties ha[d] not undertaken any discovery"). Moreover, as Plaintiff's remaining "claims arise under Washington state law, the principle of comity counsels against this Court exercising jurisdiction over claims which are properly heard by Washington state courts." *Id.* (citing *O'Connor v. Nevada*, 27 F.3d 357, 363 (9th Cir. 1994)); *see also Lemmon v. Pierce County*, No C21-5390, 2023 WL 184223, at *5 (W.D. Wash. Jan. 13, 2023) (declining supplemental

jurisdiction over state-law claims after dismissing plaintiff's Section 1983 claims with prejudice).

Therefore, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's second and third causes of action.

## V. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) Defendants' Motions to Dismiss (Dkt. Nos. 45, 46) are GRANTED. Plaintiff's first cause of action is DISMISSED WITH PREJUDICE. Plaintiff's second and third causes of action are DISMISSED WITHOUT PREJUDICE.

(2) The Bellevue Defendants' Motion to Strike (Dkt. No. 55) and Plaintiff's Motion for Leave to File Surreply (Dkt. No. 56) are DENIED AS MOOT.

(3) The Clerk of Court is DIRECTED to SEAL Plaintiff's Second Amended Complaint (Dkt. No. 44), REDACT the name N. that appears twice on page 29 and once on page 34, REDACT the entirety of pages 38 and 39, and REFILE the redacted version of the Second Amended Complaint.

Tana Lin
United States District Judge